IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
· U.S.D.C. - Atlanta

AUG 2 5 2022

KEVIN P WEIMER, Clerk
By: _____ Deputy Clerk

CRAIG R. SUMTER,
PLAINTIFF
V.
GLORIA SUMTER,
SHALENE SUMTER,
JOHN RYALL,
RONNIE SUMTER,
LILIAN DALE SUMTER,
JEFF HEBERT,
CREIGHTON HUSSEY,
PAMELA MCKAY,
TIM GEHRET,
DEFENDANTS.

Civil Action No:

1:22-CV-3444

PLAINTIFF'S
COMPLAINT

COMES NOW, Craig R. Sumter, Plaintiff in the above styled action and

files this Complaint for:

TORT, QUASI-TORT, NEGLIGENCE, EMOTIONAL DISTRESS,
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, NEGLIGENT
INFLICTION OF EMOTIONAL DISTRESS, WILLFUL & WANTON
MISCONDUCT, NEGLIGENCE PER SE, RATIFICATION OF TORT,
DELIBERATE INDIFFERENCE, INVASION OF PRIVACY, LOSS OF
CONSORTIUM, ATTEMPTED MURDER, ID FRAUD, ABUSIVE
LITIGATION, MALICIOUS PROSECUTION, BREACH OF PRIVATE
DUTY, BREACH OF LEGAL DUTY, PERSONAL INJURY,
DEFAMATION, CHILD MOLESTATION, MOLESTATION, FALSE
IMPRISONMENT, AND CONSPIRACY.

Diversity Jurisdiction [28 U.S.C. §1332]

1

Federal court jurisdiction is appropriate for this case because the Plaintiff is a citizen of a different state than all of the defendants and the matter in controversy exceeds the sum or value of $75,000.00.

Personal Jurisdiction [O.C.G.A. §9-10-91]

The plaintiff complains of the Defendants and alleges the following:

1.    My name is <u>Craig Sumter</u>, I am the Plaintiff in this matter.  I am a resident of Fulton County, Atlanta, GA.  My address is: <u>2224 Arbor Gates Dr NE, Atlanta, GA 30324.</u>

2.    The Defendants, all subject to the jurisdiction of this court, are:

   a) Gloria Sumter, residing at: 7000 Jim Ramsey Rd., Vancleave, MS 39565.

   b) Shalene Sumter, residing at:  3418 Royal Lake Dr., Floyds Knobs, IN 47119.

   c) John Ryall, residing at:  3418 Royal Lake Dr., Floyds Knobs, IN 47119.

   d) Ronnie Sumter, residing at:  646 Pinehurst Dr., Gulf Shores, AL 36542.

   e) Lilian Dale Sumter, residing at:  646 Pinehurst Dr., Gulf Shores, AL 36542.

2

f) Jeff Hebert, residing at: 810 Ursulines Ave., New Orleans, LA 70116.

g) Creighton Hussey, residing at: 6800 York Ave. S., Apt. 522, Minneapolis, MN 55435.

h) Pamela McKay, residing at: 7309 Jim Ramsey Rd., Vancleave, MS 39565.

i) Tim Gehret, residing at: 2240 Cheshire Bridge Rd. NE, Unit #206, Atlanta, GA 30324-5707.

3.     Defendants Gloria Sumter, Shalene Sumter, John Ryall, Ronnie Sumter, Lilian Dale Sumter, Jeff Hebert, Creigthon Hussey, and Pamela McKay will hereafter be referred to as "G. Sumter", "S. Sumter", "J. Ryall", "R. Sumter", "L. Sumter", "Hebert", "Hussey", and "McKay" respectively.

4.     The limitation period for this action has been tolled pursuant to O.C.G.A. §9-3-90(a). From the time Defendants assaulted and battered Plaintiff (10-19-13) until the filing of this action, Plaintiff has been mentally incompetent, unable to carry on ordinary life affairs. Plaintiff's unsoundness of mind has been such that he has been incapacitated from managing the ordinary business and affairs of his life. Even two of the Defendants (G. Sumter and Hussey) give sworn

testimony that Plaintiff since such time has been schizophrenic and mentally incompetent. Futhermore, Defendants believe that Plaintiff's unsoundness of mind is such that he is unable to obtain or maintain employment so they have paid his bills now for over three (3) years.

5.    The limitation period for this action has been tolled pursuant to O.C.G.A. §9-3-96. Defendant G. Sumter committed a fraud by concealing that she had defaulted on a lawsuit Plaintiff filed against her on March 9, 2015. She was served with the lawsuit on June 11, 2015 and failed to answer the complaint. However, Defendant G. Sumter perjuriously stated on October 11, 2016 that she (a) was served with the lawsuit; and that she (b) did answer the lawsuit (both to the court an to Plaintiff). However, Plaintiff never received the return of service nor did he receive Defendant G. Sumter's answer to the lawsuit. Non-party Dennis Bickham made agreement to receive all of Plaintiff's mail while he was incarcerated and to review it and forward it if it was something Plaintiff needed or to notify him otherwise and at the very least. Defendant Bickham never notified Plaintiff of receiving either the return of service or Defendant G. Sumter's answer to the lawsuit he served her, despite Plaintiff asking

4

several times. Plaintiff wrote the court several times and they also never received Defendant G. Sumter's answer to the lawsuit he served her. With Plaintiff being incarcerated and having to rely on Defendant Bickham, he did. Relying on Defendant Bickham, Plaintiff thought Defendant G. Sumter was lying and maybe she was never served, in an attempt to evade service. With the Defendants conspiring to keep Plaintiff in prison, Plaintiff wasn't able to contact the process server (The Sheriff's Department of Jackson County Mississippi, where Defendant G. Sumter lives) or make any other investigation as he could get no one to help him investigate. Plaintiff called Defendant Bickham approximately 35 times over the next two (2) years but Bickham would not answer his phone calls. Plaintiff also mailed Bickham numerous letters to which Bickham didn't even respond for over 18 months. Plaintiff didn't discover until April 2, 2020 that Defendant G. Sumter had been served with legal process (the lawsuit and summons) by the Sheriff's Department of Jackson County Mississippi on June 11, 2015 and that Defendant Bickham had destroyed the return of service he got from Plaintiff's UPS Store Mailbox and didn't tell Plaintiff it had arrived either. This leads to the fact that Defendant G. Sumter never answered the lawsuit Plaintiff

5

served her with which is why neither Plaintiff nor the court ever received her answer, and also when Plaintiff asked her to attach a copy of her answer to the Interrogatories Plaintiff served her with on or about September 10, 2016, she couldn't, stating that "she no longer had a copy." As this court knows, being the original document, and that she would have to of expected it to come up in court, she was required to keep it. But the reason she didn't have it was because she never actually answered the lawsuit therefore making her sworn Interrogatory answer on October 11, 2016 perjury and therefore fraud. Furthermore, Defendant Bickham sent Plaintiff a letter dated December 7, 2015 while he was incarcerated attempting to influence him to drop the lawsuit he had filed against Defendant G. Sumter stating that Plaintiff would need Defendant G. Sumter when he was released from incarceration because essentially she would be his financial life line. This was obviously part of their plan as it always has been, to cause Plaintiff financial and employment problems so that Plaintiff would be financially dependent on Defendant G. Sumter so that she/they could exert control over him.

6.    The limitation period for this action has been tolled pursuant to O.C.G.A. §9-3-96. Defendant G. Sumter conspired with Defendant

Hussey to file a fraudulent statements-based Harassment Restraining Order (HRO) against Plaintiff to violate Plaintiff's parole and Plaintiff was arrested on June 21, 2015. Defendant G. Sumter then conspired with Defendant Hussey to file a fraudulent statements-based violation of that Harassment Restraining Order which was completely fabricated and later dismissed. However that falsely filed HRO violation caused the Georgia State Board of Pardons and Paroles to pull Plaintiff's then scheduled parole date and extend his prison sentence for another twenty-one (21) months. Defendants did this to punish Plaintiff for continuing to pursue litigation against G.Sumter and continually conspired to keep Plaintiff in prison and to prevent him from being transferred to a transitional center by then making a fraudulent phone call to the Georgia State Board of Pardons and Paroles on December 15, 2016 claiming to be a female named Rebecca Jakubcin, falsely alleging that Plaintiff had called and threatened her. This was not even possible as the female, Rebecca Jakubcin died on October 14, 2014 and was therefore deceased at the time and therefore it would have been impossible for Plaintiff to threaten her.

7

7.   The limitation period for this action has been tolled pursuant to

O.C.G.A. §9-3-99.  Criminal prosecution against Defendant G.

Sumter was filed by Plaintiff via Application for Arrest Warrant on

July 24, 2020 (20MAGC-01696) and was resolved on January 31,

2022.

8.   The limitation period for this action has been tolled due to the

Statewide Judicial Emergency Order issued March 14, 2020 pursuant

to O.C.G.A. §38-3-61.  That Order was extended thirteen times

through June 7, 2021 at 11:59 p.m.

9.   The limitation period for this action has been tolled pursuant to

O.C.G.A. §9-3-96.  On December 7, 2020 Defendant G. Sumter sent

Plaintiff an email threatening to make Plaintiff homeless and cut him

off "without a penny" if he "brought anymore legal actions against

[her]."  This directly violates O.C.G.A. §16-10-93.  This has also been

confirmed as a crime in Georgia courts by case law: **Shelnutt v.**

**State, 289 Ga. App. 528, 657 S. E. 2d 611 (2008), cert. denied, No.**

**508C 0977, 2008 Ga. LEXIS 518 (Ga. 2008)**

10.  The limitation period for this action has been tolled pursuant to

O.C.G.A. §9-3-96.  On numerous occasions since Plaintiff's release

from prison in 2013 on parole and after Defendants conspired to elicit

8

a violation of Plaintiff's parole on June 21, 2015 they threatened

numerous times to prevent Plaintiff's release from prison if he were to

take legal action against them.  They then in fact did prevent

Plaintiff's release from prison and he was forced to "max out."  This

directly violates O.C.G.A. §16-10-93.  This has also been confirmed

as a crime in Georgia courts by case law: **Burke v. State, 333 Ga.**

**App. 738, 776 S.E. 2d 821 (2015)**

11.    The limitation period for this action has been tolled pursuant to

O.C.G.A. §9-3-96.  On numerous occasions after Plaintiff was

released from prison in 2018 and again after he was released from

substance abuse treatment in 2019, Defendants threatened to have

Plaintiff reincarcerated by eliciting a probation violation and have

incessantly attempted to cause him relapse/ruin his recovery to bring

forth such an event.  This directly violates O.C.G.A. §16-10-93.  This

has also been confirmed as a crime in Georgia courts by case law:

**Burke v. State, 333 Ga. App. 738, 776 S.E. 2d 821 (2015)**

12.    The limitation period for this action has been tolled pursuant to

O.C.G.A. §9-3-96.

13.    The limitation period for this action has been tolled pursuant to

O.C.G.A. §9-3-91.  Beginning August of 2020 Plaintiff has suffered at

least 3-5 seizures per week because of the threats and stress caused by G. Sumter and Defendants.  These threats and stress were caused intentionally as they knew it would cause Plaintiff to have seizures. Furthermore, Plaintiff suffered several bodily injuries to include a torn rotator cuff that G. Sumter forbade Plaintiff from having repaired for almost two (2) years and then they continued with the same intentional stress to Plaintiff which they knew previously caused him to have seizures and injury.  Anytime Plaintiff has a seizure and is not injured G. Sumter and Defendants know he is unable to do anything the entire day as he is week and disoriented but also that a terrible fear and aura of the seizure remain for approximately two (2) weeks time period.  These seizures and debilitation aura have continued almost non-stop until the present day.  Further still, because of the pain from Plaintiff's injuries and from the stress, Plaintiff has been unable to sleep without taking massive amounts of Xanax which he now no longer has a prescription for and cannot sleep.  Without sleep he has been unable to manage to work on his lawsuit or to file charges in any kind of meaningful manner.  Therefore all claims are within the statute of limitations.

14.    The limitation period for this action has been tolled pursuant to
O.C.G.A. §9-3-96. Plaintiff is suffers from the medical condition of
epilepsy of which  all Defendant are aware.  The largest contributor to
Plaintiff having seizures is stress.  As learning of Defendant's
conspiracy to have Plaintiff physically attacked/assaulted in 2013,
their subsequent acts to prevent Plaintiff from taking action against his
assailant, their actions to prevent Plaintiff from suing G. Sumter, their
actions to attempt to elicit Plaintiff's suicide which is therefore
attempted murder, their multiple successful attempts to bring about
the termination of Plaintiff's employment, their multiple successful
attempts to make Plaintiff homeless, their multiple threats to Plaintiff
to have him reincarcerated and their multiple threats to Plaintiff to
make him homeless if he were to take any legal action against them
(either civil or criminal), multiple instances of causing Plaintiff
economic harm, multiple instances of reducing Plaintiff's financial
support, multiple instances of removing Plaintiff's financial support,
multiple instances of Defendants slandering Plaintiff both directly and
through third parties, multiple instances of Defendants creating
fraudulent social media accounts to both slander/defame Plaintiff and
to frighten Plaintiff, previous multiple instances of the Defendants

having Plaintiff threatened at gunpoint and knifepoint prior to his 2015 incarceration, Plaintiff has had a drastic increase in the number/frequency and severity of seizures in the last two (2) years.

This has been done with the intention of hindering, delaying, and preventing Plaintiff from being able to take legal action against the Defendants both civilly and criminally. Plaintiff has evidence of all of these intentional actions. This violates O.C.G.A. §16-10-93.

## CLAIMS

15. G. Sumter conspired with her late husband, Leonard Sumter, to obtain confidential state secrets regarding Plaintiff's parole which are protected by O.C.G.A. §42-9-53(a) and therefore a violation of O.C.G.A. §42-9-53(c). She obtained from Plaintiff's attorney, Tom Clegg, the reason for Plaintiff's alleged parole violation in June 2015, without permission or knowledge of Plaintiff. She then, sometime after, divulged these confidential state secrets to Hussey which he then proceeded to divulge in a fraudulent statements-based Harassment Restraining Order (HRO) violation he filed against Plaintiff on 4/30/16, which was done with the intent to prevent Plaintiff from being released from prison and to prevent Plaintiff from filing criminal charges against Hussey for an aggravated assault he committed against Plaintiff. This also violates

O.C.G.A. §42-9-52(c).  From these events, Plaintiff suffered great loss by causing him to stay in prison for an additional twenty-one (21) months when he was set to parole with Parole Incentive Credits (PIC) points on or about 5/1/16 and without the PIC points was set to parole on 9/16/16.  As a result of these conspired efforts by G. Sumter and Hussey which violates O.C.G.A. §42-9-53(c), Plaintiff was not released from prison until his maximum releases date of May 21, 2018.  In addition to the additional 21 months Plaintiff had to serve in prison, Plaintiff's reputation and character were irreparably harmed as this confidential information which was statutorily protected by being classified as a confidential state secret is now, and has ever since been, publicly available to anyone that performs a Google search of Plaintiff's name and reads the fraudulently filed violation of HRO Hussey filed in the State of Minnesota.

This was done reciprocally by G. Sumter and Hussey with the intent to cause Plaintiff irreparable harm to his career, his name, his criminal record and with the intent to elicit his suicide as all Defendants believed that Plaintiff would commit suicide were he to, not only go back to prison, but were he to remain in prison for any amount of time.  It was also done to prevent Plaintiff from ever being able to have a fair hearing on the matter of Hussey's original HRO, which was also a fraudulent statements-based filing consisting of nearly 15 or more counts of perjured statements, but also to prevent Plaintiff from having a fair hearing on the

13

matter of Hussey's fraudulently filed HRO violation. And as both were filed in the state of Minnesota and it was actually the original HRO that caused a warrant to be filed for Plaintiff's arrest, and the Interstate Agreement and Detainers Act (IADA) says that no inmate would be extradited for a misdemeanor, Plaintiff was not able to appear in court in Minnesota to contest either filing. It was also done as Plaintiff had, prior to his reincarceration, filed a lawsuit against G. Sumter seeking damages in the amount of $1.5 million dollars, which she was served with only 10 days prior to his reincarceration, and for which she defaulted on just after Plaintiff's arrest. With Plaintiff being incarcerated he was unable to learn that G. Sumter had been served with the lawsuit he filed against her but also that she had defaulted and all the Defendants believed this would protect G. Sumter from having to pay the damages for the lawsuit she defaulted on, but also they believed that Plaintiff would never make it out of prison alive as they all believed Plaintiff would commit suicide if he went back to prison and they therefore attempted to, on numerous occasions, to elicit his suicide. This was literally attempted murder.

For the rest of Plaintiff's life, he will be hindered from obtaining employment as not only are the violation of Plaintiff's parole, the confidential state secret that was divulged, and all the fraudulently filed HRO documents searchable by potential employers but it also gives Plaintiff a criminal record that is not true

and paints the picture that Plaintiff is a violent offender, when he is not, and that he is a repeat offender.

For this Plaintiff seeks damages and for lost employment for the years he was incarcerated, for the rest of his life as his career is now ruined, for the lost damages for the lawsuit G. Sumter defaulted on (which he did not learn of until April 2020, had no way to learn of, and for which the Judicial Emergency due to COVID-19 was in place until June 11, 2021 making this within the Statute of Limitations).

The level of egregiousness for these acts is horrendous and according to Pinkerton Theory these reciprocal acts which proves a "meeting of the minds" proves they acted with the prerequisite intent to further the conspiracy and to shield one another makes this a definitive conspiracy, making all Defendants parties to the crime and therefore all Defendants civilly as well as criminally liable.

Plaintiff seeks damages for emotional destress (both negligent infliction of emotional distress and intentional infliction of emotional distress) pursuant to O.C.G.A. §51-1-13; 51-1-14 for personally injury; attempted murder/intentionally attempting to elicit Plaintiff's suicide pursuant to O.C.G.A. §51-1-13; 51-1-14; and as Defendants actions show willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of

conscious indifference to consequences, Plaintiff seeks punitive damages pursuant to O.C.G.A. §51-12-5.1.

16. S.Ryall conspired with G. Sumter to obtain confidential state secrets regarding Plaintiff's June 21, 2015 alleged parole violation which she did not show/prove or Plaintiff learn of until S. Ryall sent Plaintiff a text message from her son, Alex Ryall's, phone on November 14, 2020. This of course was during the period of Judicial Emergency ordered during COVID-19 which did not end until June 11, 2021 and therefore the statute of limitations did not begin to run until then, making this claim within said statute of limitations and timely. Not only did S. Ryall seek to and obtain such confidential state secrets from G. Sumter but she then also divulged them to at least one person, her son Alex Ryall. There's no telling how many others she had divulged these confidential state secrets to which irreparably have harmed and will continue to exponentially harm Plaintiff, Plaintiff's reputation, and Plaintiff's relationship with his nephews Alex and Jacob Ryall. This violates O.C.G.A. §42-9-53(C).

For this Plaintiff seeks damages pursuant to O.C.G.A. §51-1-6 as it is a breach of legal duty. As Defendants actions show willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the

presumption of conscious indifference to consequences, Plaintiff seeks punitive

damages pursuant to O.C.G.A. §51-12-5.1

      17.  Plaintiff is suffers from the medical condition of epilepsy of which

All Defendant are aware.  The largest contributor to Plaintiff having seizures is

stress.  As learning of Defendant's conspiracy to have Plaintiff physically

attacked/assaulted in 2013, their subsequent acts to prevent Plaintiff from taking

action against his assailant, their actions to prevent Plaintiff from suing G. Sumter,

their actions to attempt to elicit Plaintiff's suicide which is therefore attempted

murder, their multiple successful attempts to bring about the termination of

Plaintiff's employment, their multiple successful attempts to make Plaintiff

homeless, their multiple threats to Plaintiff to have him reincarcerated and their

multiple threats to Plaintiff to make him homeless if he were to take any legal

action against them (either civil or criminal), multiple instances of causing Plaintiff

economic harm, multiple instances of reducing Plaintiff's financial support,

multiple instances of removing Plaintiff's financial support, multiple instances of

Defendants slandering Plaintiff both directly and through third parties, multiple

instances of Defendants creating fraudulent social media accounts to both

slander/defame Plaintiff and to frighten Plaintiff, previous multiple instances of the

Defendants having Plaintiff threatened at gunpoint and knifepoint prior to his 2015

incarceration, Plaintiff has had a drastic increase in the number/frequency and severity of seizures in the last two (2) years.

This has been done with the intention of hindering, delaying, and preventing Plaintiff from being able to take legal action against the Defendants both civilly and criminally. Plaintiff has evidence of all of these intentional actions. This violates O.C.G.A. §16-10-93.

For this Plaintiff has a cause of action to recover damages from Defendants pursuant to O.C.G.A. §51-1-6 as it is a breach of legal duty. Plaintiff also has a cause of action to recover damages from Defendants pursuant to O.C.G.A. §§51-1-13 and 51-1-14 as the epileptic seizures have caused Plaintiff physical injury to his body, and emotional distress. As Plaintiff could literally die from a seizure at any time and this is also one of the Defendant's motives and intents, it violates O.C.G.A. §16-4-1 for criminal attempt to commit murder. As criminal attempt to commit murder has a statute of limitation of 7 years, this is well within the time period for filing and since this would be a breach of legal duty pursuant to O.C.G.A §51-1-6, Plaintiff has a cause of action for recovery of damages pursuant to such. As Defendants actions show willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences, Plaintiff seeks punitive damages pursuant to O.C.G.A. §51-12-5.1.

18

18. Because of the multiple attempts to elicit Plaintiff's suicide between 2013 and today (March 2022); multiple break-ins to Plaintiff's apartment between 2013-2015; multiple threats to Plaintiff's life, safety, financial well-being, living situation and freedom between 2013 and today (March 2022); multiple assaults of which Plaintiff has been the victim; and all of Plaintiff's seizures elicited by the Defendants intentionally, Plaintiff lives in constant fear for his safety and life.

Plaintiff lost his wallet which includes the cost of the wallet and the value of its contents. There was approximately $100.00 cash; an un-activated MARTA breeze card worth $100.00; a credit card with approximately $300.00 in available spending limit; a Bank of America debit card with approximately $3,800.00 in Plaintiff's checking account; food stamp card with an approximate $300.00 balance; driver's license; business cards; account passwords and more. As every man of "slight diligence," how inattentive he would be, would take of his own property would not have disposed of Plaintiff's property in this manner without returning it, Gehret's absence of this slight diligence is termed gross negligence per O.C.G.A. §51-1-7.


Plaintiff also lost a copy of his apartment key. Someone in possession of Plaintiff's apartment key would have unfettered access to Plaintiff's apartment and

its contents. Plaintiff's apartment contains many valuable items such as TV's, laptop computers, case, etc. His apartment also contains a plethora of evidence which Plaintiff had amassed, at the time, over the previous six (6) years. Much of this is packed in a box, some in folders and a file box, the rest on flash-drives, external hard drives, two laptop computers and loose paperwork.

The financial loss, the detriment to Plaintiff's lawsuit(s), perceived or real, and the deceitful connivance of the defendants causes Plaintiff extreme emotional distress. This includes fear, disappointment, anger, rage, fury, depression, anxiety, inflammation of his PTSD, mania, sorrow, frustration, embarrassment and hopelessness.

G. Sumter, the Plaintiff's mother, informed Plaintiff during a recorded phone call on 10/12/19 that Gheret's actions, which resulted in the destruction of Plaintiff's property, were because Plaintiff got upset with Gheret after Gheret broke his promise by failing to fulfill another private agreement he made to Plaintiff. This implies retaliation and therefore malice.

Plaintiff also believes, as Gheret is acting in concert with G. Sumter and

Plaintiff informed G. Sumter on or around 12/15/18 of his intent to sue Gheret if

Gheret failed to do with Plaintiff's money what he had agreed to do or failed to

fulfill the private agreement he made to Plaintiff, that G. Sumter clandestinely

relayed this to Gheret and then Gheret maliciously destroyed Plaintiff's property in

retaliation.


Plaintiff seeks to recover actual damages, consequential damages and

continuing damages.  Plaintiff seeks damages for emotional distress pursuant to

O.C.G.A. §§51-1-13; 51-1-14.  Plaintiff seeks damages for breach of private duty

pursuant to O.C.G.A. §51-1-8.  Plaintiff seeks punitive damages pursuant to

O.C.G.A. §51-12-5.1 as Gheret's actions show willful misconduct, malice,

wantonness and oppression.  Plaintiff also pleads conspiracy as Gheret's

destruction of Plaintiff's property benefitted/benefits G. Sumter and their cohorts

and was also motivated by his desire to protect them from being sued or criminally

charged.  Therefore, Plaintiff has a cause of action to recover damages from G.

Sumter and their cohorts pursuant to O.C.G.A. §51-12-30.

19. Ever since Plaintiff was released from incarceration on Parole on 2-27-

13 G. Sumter and her co-conspirators have attempted to elicit Plaintiff's suicide on

innumerable dates as well as cumatively. This was done by conspiring with Plaintiff's former employer, David Scott, to create a workplace that was not only excessively negative, of a sexually harassing nature, caused Plaintiff severe shoulder injury, and was one in which the Defendants could control as they had covertly, without Plaintiff's knowledge, created and funded Plaintiff's position there as Business Development Manager. On June 9, 2013 Plaintiff, after working there for 1 year, 3 months, who is epileptic, called his employer, Scott, and told him he felt as though he was going to have a seizure and told him he could not make it into work. Scott, when interviewing Plaintiff, knew that he was epileptic and they discussed the possibility of Plaintiff not being able to drive or come to work on rare occasion as it would be dangerous to not only his life but the lives of others. Scott agreed, stating that this would be fine. In addition to this Plaintiff had a contract with a salary that guaranteed him 2 weeks of vacation, 2 paid sick leave days, and 2 bereavement days. At this time, Plaintiff had not taken a single day of any of his time off. On this particular morning, Scott refused to let Plaintiff take the day off and threatened to "fire" Plaintiff if he did not come to work, despite feeling as though he might have a seizure. This breached the contract Scott had with Plaintiff for his employment in violation of O.C.G.A. §51-1-8 for which Plaintiff seeks damages. This caused Plaintiff emotional distress because he feared for his safety, the safety of the general public, and he feared for the loss of his job.

Plaintiff seeks punitive damages pursuant to O.C.G.A. §51-12-5.1 as Scott's actions show willful misconduct, malice, wantonness and oppression. When Plaintiff went into work, he had an epileptic seizure in his office falling and dislocated his left shoulder, fracturing the Glenoid bone, suffering and acromio-clavicular joint separation, and tearing the labum (covering over the Glenoid bone). Plaintiff was unable to lift his left arm and Scott forbade Plaintiff from going to the doctor or later having surgery. Later that day when Plaintiff got home from work, he called G. Sumter who also forbade him from going to the doctor or having surgery. This caused Plaintiff additional emotional distress and caused him to fear for his safety and life. Defendants were obviously attempting to cause Plaintiff serious physical harm, limitations, and extreme physical and emotional pain. As Plaintiff wasn't sure what was going on or why, he just kind of kept to himself and kept his head down to maintain employment although not able to sleep and not able to exert any physical activity using his left side of his body. Plaintiff learned from Bickham that all the Defendants had "created and funded" the position at Scott's company clandestinely. Defendant G. Sumter confirmed this via Interrogatory in 2016 but, in an attempt to distance Plaintiff's family from the obviously nefarious event, told Plaintiff that it was only Plaintiff's "friends" that had talked about creating and funding a position for Plaintiff. Furthermore, when asking G. Sumter via Interrogatory in 2016 about this, she stated that Plaintiff's

injury "wasn't Scott's fault." This is despite Scott breaching Plaintiff's contract and making him come to work in spite of never having taken a sick day, a bereavement day or a day of vacation.

20. On numerous and cumulative occasions, Defendants have attempted to elicit Plaintiff's suicide. He has proof of this as Defendant G. Sumter's late husband, Leonard Sumter, called the DeKalb Cty Jail in June 2015 and reported that Plaintiff was going to commit suicide if he had to go back to prison. Well, Plaintiff had just been arrested for an alleged Parole Violation in which his former assailant, Defendant Hussey, had filed a fraudulent statements-based Restraining Order against Plaintiff in Hennepin Minnesota and then sent it to the "North Fulton Parole Office" where Plaintiff did not report (he reported to the "South Fulton Parole Office") and made it look as though Plaintiff had instead physically attacked/assaulted Hussey and not the other way around. The North Fulton Parole Office immediately issued a warrant for Plaintiff's arrest. Once arrested, Plaintiff's Parole Officer came to the DeKalb Cty Jail tried to get Plaintiff to sign a waiver of Parole Hearing. Plaintiff refused and insisted on going to the Parole Hearing for which Plaintiff's parents hired Plaintiff representation. Plaintiff's representation then refused to help or say anything in regard to Hussey's fraudulent-statements based restraining order and he also despite Plaintiff's insistence attend the Parole Revocation Hearing, without Plaintiff's wanting him

24

to, entered a plea of "guilty with explanation." This defeated Plaintiff's attempt to defend and stand up for himself and completely defeated the purpose of even attending the Parole Revocation Hearing.

21. In a 20 year time period Plaintiff only had 5 seizures and never took anti-seizure medication. In the last 18-24 months, Plaintiff has suffered nearly 200 seizures from all the intentional infliction of stress Defendants have caused him. From these seizures, Plaintiff has suffered innumerable physical injuries to include a torn rotator cuff, which from every seizure since it was torn has been re-torn or inflamed, Plaintiff has been in constant unbearable pain, unable to exercise or lift weights/workout, something he has enjoyed with great pride for over 30 years. Plaintiff has also been unable to have a good nights rest from the stress and pain. Plaintiff also knows that Defendants are seeking to cause his death through a seizure and/or to elicit his suicide which causes him extreme fear and anxiety. This also inflames and exacerbates his epilepsy and is literally attempted murder. This violates O.C.G.A. §§16-4-1; 16-10-93; 16-10-32.   Plaintiff seeks to recover actual damages, consequential damages and continuing damages.  Plaintiff seeks damages for emotional distress and personal injury pursuant to O.C.G.A. §§51-1-13; 51-1-14.  Plaintiff also seek to recover for damages for Defendants breach of legal duty pursuant to O.C.G.A. §51-1-6.   As Defendants actions show willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care

25

which would raise the presumption of conscious indifference to consequences, Plaintiff seeks punitive damages pursuant to O.C.G.A. §51-12-5.1.

22. Plaintiff pleads conspiracy because he contacted each of the Defendants informing them of what Hussey and G. Sumter did and asked for their help and they refused.  Not only did they refuse but they did things to protect G. Sumter and Hussey.  For this Plaintiff seeks to recover actual damages, consequential damages and continuing damages.  Plaintiff seeks damages for emotional distress and personal injury pursuant to O.C.G.A. §§51-1-13; 51-1-14.  Plaintiff also seek to recover for damages for Defendants breach of legal duty pursuant to O.C.G.A. §51-1-6.   As Defendants actions show willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences, Plaintiff seeks punitive damages pursuant to O.C.G.A. §51-12-5.1.

23. On December 7, 2020 Defendant G. Sumter sent Plaintiff an email threatening to make Plaintiff homeless and cut him off "without a penny" if he "brought anymore legal actions against [her]."  This directly violates O.C.G.A. §16-10-93.  This has also been confirmed as a crime in Georgia courts by case law: **Shelnutt v. State, 289 Ga. App. 528, 657 S. E. 2d 611 (2008), cert. denied, No. 508C 0977, 2008 Ga. LEXIS 518 (Ga. 2008)**.  This crime has caused Plaintiff extreme emotional distress to include nausea, anxiety, extreme weight loss (over

25-28 lbs), exacerbation of epilepsy to manifest itself in over 200 seizures in two

(2) years, an in ability to function or carry or his normal day to day affairs, to

maintain a social life or to follow through with hundreds of social engagements, or

obtain or maintain gainful employment, to begin or maintain any type of romantic

relationship, chagrin, depression hopelessness and fear.  Plaintiff seeks damages

for emotional distress and personal injury pursuant to O.C.G.A. §§51-1-13; 51-1-

14.  Plaintiff also seek to recover for damages for Defendants breach of legal duty

pursuant to O.C.G.A. §51-1-6.   As Defendants actions show willful misconduct,

malice, fraud, wantonness, oppression, or that entire want of care which would

raise the presumption of conscious indifference to consequences, Plaintiff seeks

punitive damages pursuant to O.C.G.A. §51-12-5.1.

24. Plaintiff filed an application for arrest warrant against G. Sumter June

2021 and all parties were notified that the hearing was to take place on 4-11-22.

On March 25, 2022, approximately two weeks prior to the hearing, G. Sumter

informed Plaintiff that she was no longer going to send him two-thousand dollars

($2000) per month that she had been sending him for three (3) years prior to this

date and subsequently she ceased sending him this two-thousand dollars ($2000)

causing him economic harm.  This directly violates O.C.G.A. §16-10-93.  Plaintiff

seeks to recover actual damages, consequential damages and continuing damages.

Plaintiff seeks damages for emotional distress and personal injury pursuant to

O.C.G.A. §§51-1-13; 51-1-14.  Plaintiff also seek to recover for damages for

Defendants breach of legal duty pursuant to O.C.G.A. §51-1-6.  And as G.

Sumter's cessation of sending Plaintiff the two-thousand dollars ($2000) per

month that she had previously made agreement to send him, this is a breach of

private duty, therefore Plainitff seeks to recover for damages pursuant to O.C.G.A.

§51-1-8.  And this is not the first time but close to the 30th time G. Sumter has done

such thing.  Therefore due to the repetitive nature and as Defendants actions show

willful misconduct, malice, fraud, wantonness, oppression, or that entire want of

care which would raise the presumption of conscious indifference to consequences,

Plaintiff seeks punitive damages pursuant to O.C.G.A. §51-12-5.1.

　　　25. When Plaintiff was 9 years old both G. Sumter and her late husband,

Leonard Sumter Jr., molested him.  When Plaintiff was approximately fourteen

(14) years old, Plaintiff told his sister, S. Sumter, that both his parents had

molested him and she then went behind his back and told them what he had told

her.  G. Sumter and her late husband, Leonard Sumter, then proceeded to falsely

accuse a teacher at Plaintiff's high-school named Terry Breland of molesting

Plaintiff.  They took Plaintiff before the then principal, Charlie Brown, and falsely

told this principal that the teacher Terry Breland had molested Plaintiff.  When

Plaintiff refused to lie or falsely accuse the teacher Terry Breland of molesting

him, G. Sumter and her late husband punished Plaintiff.  They then went to

Plaintiff's friend, Hank Tanner's, parents and knowing that their family was close to and good friends with the teacher, Terry Breland, lied and told them how Terry Breland had molested Plaintiff and proceeded to have Hank Tanner questioned and tried to twist anything Hank Tanner said or that Terry Breland had ever said to Hank Tanner's family in order to prop up their false accusation that Terry Breland had molested Plaintiff. Plaintiff's entire high-school then mocked Plaintiff for over a year for falsely accusing a teacher whom everyone loved and was good to everyone of molesting him. Despite Plaintiff never stating this happened. G. Sumter and her late husband have retaliated against Plaintiff ever since by trying to ruin his life and for being homosexual. Plainitff didn't understand this until he learned of Defendants actions in April 2020. This directly violates O.C.G.A. §16-10-93. Plaintiff seeks to recover actual damages, consequential damages and continuing damages. Plaintiff seeks damages for emotional distress and personal injury pursuant to O.C.G.A. §§51-1-13; 51-1-14. Plaintiff also seek to recover for damages for Defendants breach of legal duty pursuant to O.C.G.A. §51-1-6. And this is not the first time but close to the 300th time G. Sumter has done such thing. Therefore due to the repetitive nature and as Defendants actions show willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences, Plaintiff seeks punitive damages pursuant to O.C.G.A. §51-12-5.1.

26. When Plaintiff was eighteen (18) years old for no apparent reason at all he had his first seizure. This was after he received a fifty-thousand dollar ($50,000) scholarship from the United States Air Force in computer engineering and his plan was to go into the air-force to become a pilot and to then go into the Space Program as he had dreamed since he was in the fourth grade to be an astronaut. Plaintiff won himself a full-paid week trip to Space Camp in the fourth grade and went when he was ten (10) years old. About one and a half (1 ½) years after G. Sumter and her late husband falsely accused Plaintiff's teacher, Terry Breland, of molesting Plaintiff, when Plaintiff was about fifteen (15) years old, they all of the sudden purported to want to help Plaintiff achieve his dream by offering to pay for flying lessons which he began at the age of sixteen (16). Over the course of the next year, Plaintiff completed all of the requirements to earn his private pilot's license (he completed 40 hours of flight time, took a ground school class, passed the written exam, and one cross-country flight). All he had left was one more cross-country flight and an FAA check ride to get his private pilot's license when G. Sumter and her late husband began to torcher and harass Plaintiff about money and the cost of the flight lessons. It was literally only a couple hundred dollars more for him to complete the last cross country flight and get his license. This caused Plaintiff to cease his flying lessons and not be able to earn his private license despite them offering to do this and making the private agreement

30

to Plaintiff to do this. This was obviously done to get Plaintiff to work hard for an entire year and then rip it out from under him in retaliation for telling his sister, S. Sumter, that they had molested him. Then at the age of eighteen (18) years old, during Plaintiff's senior year of high-school for his last Christmas home, despite Plaintiff never having ever asked for or conveying any interest in going back to space camp, G. Sumter and her late husband surprised Plaintiff with a week's paid trip to Space Camp in Huntsville, AL. Plaintiff was confused by this and asked them to get a refund and give him what he asked for, which they did. Plaintiff decided he wanted to attend LSU for college, which G. Sumter and her late husband, despite them both going to LSU themselves, forbade him from going to LSU and said they wouldn't pay for him to go there. They then told Plaintiff that if he got a scholarship in the manner which he did in April-May of the following year, that they would purchase him a brand new car at a cost of up to thirty (30) thousand dollars. This was in the year 1996. After Plaintiff obtained the scholarship, G. Sumter and her late husband refused to purchase the car they made agreement to purchase him despite Plaintiff earning a fifty (50) thousand dollar scholarship to LSU. Plaintiff offers all of this as preliminary evidence that G. Sumter and her late husband poisoned Plaintiff with an unknown chemical to cause him to be epileptic. As further evidence of this Plaintiff offers that without reason, his sister's Chocolate Lab mix named Cody, whom she had for a couple of years

all of the sudden started having seizures and became epileptic prior to Plaintiff becoming epileptic and that she poisoned her dog with the same chemical as a test to make him epileptic before G. Sumter and her late husband used this on Plaintiff to make him epileptic. As Plaintiff did not understand this or learn of it until 2020, the right did not accrue until then. Plaintiff seeks to recover actual damages, consequential damages and continuing damages. Plaintiff seeks damages for emotional distress and personal injury pursuant to O.C.G.A. §§51-1-13; 51-1-14. Plaintiff also seek to recover for damages for Defendants breach of legal duty pursuant to O.C.G.A. §51-1-6. As Defendants actions show willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences, Plaintiff seeks punitive damages pursuant to O.C.G.A. §51-12-5.1.

27. On or about 3-25-22 G. Sumter informed Plaintiff that she was reducing the amount of money she was sending him by two-thousand (2000) dollars per month. This was money she had previously made private agreement to send Plaintiff and had sent him for almost three (3) years. She also knows that Plaintiff needed and continues to need this money for Uber and Lyfts because of all of the seizures he has been having in the last 18-24 months and his inability to drive. When she quit sending the two-thousand (2000) per month she sent him a one-time payment of five hundred (500) dollars telling him it was so he could get new front

tires for his already wrecked car which has needed brake pads for years, has needed a transmission sensor for years and has a faulty engine that Hyundai has guaranteed will seize and catch fire. She did this because she is wanting to force Plaintiff to drive a dangerous automobile and with all the intentional seizures she and the Defendants have been causing Plaintiff, she and the Defendants are hoping Plaintiff will have a seizure while driving and injure or kill himself as well as injure others. She knew that not only would he be driving a faulty dangerous automobile, unable to afford Ubers and Lyfts but that the simple cessation of sending the money would cause Plaintiff to have seizures. She did this because she knew how it would stress Plaintiff out and cause him to have epileptic seizures. In August of 2020 Plaintiff informed G. Sumter that her threats and her subsequent exertion of financial control over him by reducing money she sent him based upon legal actions he would take caused him an unbearable amount of stress and was what had begun causing his seizures. Two weeks later she completely stopped sending Plaintiff money without warning when her last communication in regard to money was that he was welcome for her sending it and for him to let her know if he needed anymore. Plaintiff then had a very bad seizure injuring his shoulder and tearing his rotator cuff among other things and he has been pretty much unable to workout his upper body since. He has also been unable to sleep since from the pain of the injury and all the stress, which Defendants are aware of because

33

Plaintiff informed G. Sumter. Additionally unable to sleep or obtain employment and with G. Sumter reducing the amount of money she sends Plaintiff by two thousand (2000) dollars per month he has been unable to afford an attorney, which was Defendants plan all along. Plaintiff seeks to recover actual damages, consequential damages and continuing damages. Plaintiff seeks damages for emotional distress and personal injury pursuant to O.C.G.A. §§51-1-13; 51-1-14. Plaintiff also seek to recover for damages for Defendants breach of legal duty pursuant to O.C.G.A. §51-1-6. Plaintiff also seek to recover for damages for Defendants breach of private duty pursuant to O.C.G.A. §51-1-8. As Defendants actions show willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences, Plaintiff seeks punitive damages pursuant to O.C.G.A. §51-12-5.1.

28. On or about 3-25-22 G. Sumter informed Plaintiff that she was reducing the amount of money she was sending him by two-thousand (2000) dollars per month. This was money she had previously made private agreement to send Plaintiff and had sent him for almost three (3) years. She did this because she knew how it would stress Plaintiff out and cause him to have epileptic seizures. In

August of 2020 Plaintiff informed G. Sumter that her threats and her subsequent exertion of financial control over him by reducing money she sent him based upon legal actions he would take caused him an unbearable amount of stress and was what had begun causing his seizures. Two weeks later she completely stopped sending Plaintiff money without warning when her last communication in regard to money was that he was welcome for her sending it and for him to let her know if he needed anymore. G. Sumter and Defendants sought to intentionally cause Plaintiff to have multiple seizures per week and to injure himself and they hoped he would die from a seizure making this attempted murder. Plaintiff seeks damages for emotional distress and personal injury pursuant to O.C.G.A. §§51-1-13; 51-1-14. Plaintiff also seek to recover for damages for Defendants breach of legal duty pursuant to O.C.G.A. §51-1-6. Plaintiff also seek to recover for damages for Defendants breach of private duty pursuant to O.C.G.A. §51-1-8. As Defendants actions show willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences, Plaintiff seeks punitive damages pursuant to O.C.G.A. §51-12-5.1.

## **RELIEF SOUGHT**

WHEREFORE, Plaintiff demands judgement against the Defendants for $55,225,000, plus interest and court costs.

Date: 8/25/2022

_____
Signature of Plaintiff, pro se

Craig R. Sumter
2224 Arbor Gates Dr NE
Atlanta, GA 30324
craig.r.sumter@gmail.com
(770) 807-9685